IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY,
CAMDEN VICINAGE

_____
:
CHRISTINE DRONEY & :
TIMOTHY DRONEY, :
 :
Plaintiffs, :
: Civil No. 18-849 (RBK/KMW)
v. :
: **OPINION**
VIVINT SOLAR, :
 :
Defendant. :
_____

**KUGLER**, United States District Judge:

**THIS MATTER** comes before the Court on Defendant Vivint Solar Developer, LLC's ("Vivint") Motion to Compel Arbitration and Stay Proceedings [Doc. No. 12] in response to Christine and Timothy Droney's (Plaintiffs) Amended Complaint [Doc. No. 11] alleging Defendant violated the Fair Credit and Reporting Act ("FCRA"), 15 U.S.C. §1681, *et. seq* by accessing Plaintiffs' credit history without their consent. Defendant asks the Court to compel arbitration and stay proceedings based upon Christine Droney's signing of a Power Purchase Agreement ("PPA") with a valid arbitration clause.

I.     BACKGROUND

    A. Facts

Plaintiffs Christine Droney and Timothy Droney are spouses. Am. Compl. [Doc. No. 11] ¶ 5. On January 21, 2016, Christine Droney heard the doorbell ring at her home in Linwood,

New Jersey. *Id.* ¶ 7. She greeted someone named Jeremy,[1] an employee of Defendant Vivint Solar, LLC who informed her that he was working "in concert with" her electric supplier, Atlantic City Energy. *Id.* ¶ 9. Jeremy then told Mrs. Droney about a grand opportunity: the Droney home may qualify for a government program for free solar panels. *Id.* ¶ 10. The exchange that followed set the scene for the instant lawsuit.

Jeremy explained that he needed to conduct a "roof survey." *Id.* ¶ 9. Before he could survey the roof, however, his office needed Mrs. Droney to "confirm [she] own[ed] the property." *Id.* ¶ 11. He then presented an iPad and asked her to sign. *Id.* ¶ 12. He did not reveal that any information or any contract existed on the iPad. *Id.* ¶ 13. He also did not ask or suggest that anyone would procure Plaintiffs' credit reports. *Id.* ¶ 15. Instead, Mrs. Droney "only saw a signature pad that Jeremy pointed to on the device . . ." *Id*. She then "complied" with Jeremy's oral request to "confirm" ownership of the property and signed the iPad. *Id.* ¶¶ 11, 15.

The next day, on January 22, 2016, Mrs. Droney received an alert that Defendant Vivint Solar had inquired into her consumer credit report. *Id.* ¶ 16. She similarly learned that Defendant inquired into her husband's consumer credit report. *Id.* ¶ 17. Upon this information, Mrs. Droney contacted the Linwood police department. *Id.* ¶ 24. She filed related complaints with the Better Business Bureau, Federal Trade Commission, and Defendant Vivint Solar. *Id.* ¶¶ 27–31. Specifically, Mrs. Droney charged that Defendant "engaged in a calculated attempt to

---

[1] "Jeremy" is later identified as "Jeremy O'Dell." See Pls. Opp'n Motion [Doc. No 14] at 9. The Court also notes that Plaintiffs' Complaint improperly identified Defendant as "Vivint Solar." Defendant's proper name is "Vivint Solar Developer, LLC." *See* Def. Mot'n to Compel [Doc. No. 12] at 1. For the sake of clarity, this Opinion will refer to Defendant as "Vivint" or "Vivint Solar."

mislead" her in order to obtain her and her husband's consumer credit reports. *Id.* ¶ 22. Defendant representative Tanner Baumgarten responded to Mrs. Droney's complaint and sent letters to the relevant credit bureaus which asked to stop any inquiry into the Droney's consumer credit reports. *Id.* ¶¶ 26–29.

On January 20, 2018, Plaintiffs commenced the instant lawsuit against Defendant for violating the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"). Compl [Doc. No. 1]. In the Amended Complaint, Plaintiffs alleged that Defendant "surreptitiously enrolled them into a bogus finance contract for solar services they never wanted . . ." Am. Compl. [Doc. No. 11] ¶ 70. In doing so, Defendant accessed their consumer credit reports unlawfully and under false pretenses. *Id.* ¶¶ 2, 20–1. The Droneys further alleged that Defendant routinely engaged in such unlawful business practices in order to obtain consumer reports. *Id.* ¶ 38.

Defendant now moves to compel arbitration based on Mrs. Droney's signed Residential Solar Power Purchase Agreement ("PPA). Def. Mot. Comp. Arb. [Doc. No. 12]. Plaintiffs claim that they had never seen this document prior to the filing of the initial complaint. Am. Compl. ¶ 51. Plaintiffs further assert that the document is a fraud and was fraudulently executed without their consent or knowledge. *Id.* ¶¶ 55–7.

### B. Residential Solar Power Purchase Agreement

The Residential Solar Power Purchase Agreement is a twenty-three-page document that contains an arbitration clause. ("PPA") [Doc. No. 12-4]. The document is dated January 21, 2016. *Id.* The document includes the name and electronic signature of Plaintiff Christine Droney. *Id.* The agreement purports to "commit" Mrs. Droney to have solar panels installed on

her house and for her to buy energy from Vivint Solar for an "initial term" of twenty years. *Id.* The arbitration clause at issue is as follows:

> (e) <u>Arbitration of Disputes</u>. **PLEASE READ THIS PROVISION CAREFULLY. BY SIGNING BELOW, YOU ACKNOWLEDGE AND AGREE THAT, WITH LIMITED EXCEPTIONS, ANY DISPUTE BETWEEN US SHALL BE RESOLVED BY BINDING ARBITRATION**. Arbitration is more informal than a lawsuit in court. In arbitration, disputes are resolved by an appointed arbitrator instead of a judge or jury. Therefore, by signing below, YOU ARE WAIVING THE RIGHT TO A TRIAL BY JURY. By signing below, You also agree to bring claims against Us only in Your individual capacity and YOU ARE WAIVING THE RIGHT TO INITIATE OR PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING. . . .
>
> Scope of this Arbitration Provision: Either You or We may, without the other's consent, elect mandatory, binding arbitration for any claim, dispute, or controversy arising out of or relating to (i) any aspect of the relationship between You and Us, whether based in contract, tort, statute, or any other legal theory; (ii) this Agreement or any other agreement concerning the subject matter hereof; (iii) any breach, default, or termination of this Agreement; and (iv) the interpretation, validity, or enforceability of this Agreement, including the determination of the scope or applicability of this Section 6(e) (each, a "**Dispute**"). Any questions about whether any Dispute is subject to arbitration shall be resolved by

interpreting this arbitration provision in the broadest way the law will allow it to be enforced. . . .

*Id.* at 10–12 (bold and emphasis in original).

The PPA also has two boxes above the signature line. *Id.* Both appear checked. *Id.* The first says,

> BY CHECKING THIS BOX, YOU AGREE TO RECEIVE ELECTRONIC RECORDS AS FURTHER DESCRIBED IN SECTION 7(m), AND AGREE THIS CHECKBOX CONSTITUTES YOUR ELECTRONIC SIGNATURE.

*Id.* at 17. The second box says,

> BY CHECKING THIS BOX, YOU AGREE TO ARBITRATION AND WAIVE THE RIGHT TO A JURY TRIAL AS DESCRIBED IN SECTION 6(e), AND AGREE THIS CHECKBOX CONSTITUTES YOUR ELECTRONIC SIGNATURE.

*Id.*

## II. STANDARD OF REVIEW

### A. Federal Arbitration Act

The Federal Arbitration Act ("FAA") allows federal courts to compel arbitration "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue." 9 U.S.C. § 4. Under the FAA, written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the

revocation of any contract." 9 U.S.C. § 2. A party seeking to enforce an arbitration agreement may petition the Court for "an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4.

Courts will not entertain a challenge to the "validity of the contract as a whole, as opposed to the arbitration clause in particular, [because such challenge] does not present a question of arbitrability." *Puleo*, 605 F.3d at 180 n. 4 (citing *Buckeye Check Cashing, Inc. v Cardegna*, 546 U.S. 440, 445–46 (2006). The Court views challenges to the contract as a whole separately from those aimed at the arbitration contract because agreements to arbitrate are severable from a larger contract, and therefore may be separately enforced and their validity determined. *See Rent-A-Center v. Jackson*, 561 U.S. 63 (2010). Thus, to qualify as a question of arbitrability that the Court may consider, the challenge must "relat[e] to the making and performance of the agreement to arbitrate." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 338 U.S. 395, 404 (1967).

The Third Circuit distinguishes between contracts that are asserted to be "void" or non-existent, and those that are merely voidable for the purposes of evaluating whether the making of an arbitration agreement is in dispute. *See Sandvik AB v. Advent Int'l Corp*., 220 F.3d 99, 104, 107 (3d. Cir. 2000). Said another way, a Court will not refer a matter to arbitrate "without a definitive conclusion on the issue whether an agreement to arbitrate actually existed." *Id.* at 111. As Judge Salas explained, "the FAA mandates enforcement of arbitration provisions in all but two circumstances: (1) when a party alleges that the contract as a while is void *ab initio* for any reason, or (2) when a party alleges that the arbitration clause itself is void for reasons related

specifically to the arbitration clause." *Shri Lakshmi Cotsyn Ltd. v. HN Intern Group*, No. 2:12-0164, 2013 WL 1222718 at *3 (D.N.J. Mar. 25, 2013).

### B. Motion to Compel Arbitration

In a motion to compel arbitration, the Court must inquire: (1) whether the parties entered into a valid arbitration agreement; and (2) whether the dispute at issue falls within the scope of the arbitration agreement. *Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 523 (3d Cir. 2009). "If the response is affirmative on both counts, then the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms." *Id.*; *see also* 9 U.S.C. § 4.

The Third Circuit has set a two-tier standard of review when considering motions to compel arbitration. *See Guidotti v. Legal Helpers Debt Resolutions, LLC*, 716 F.3d 764 (3d Cir. 2013). If the face of the complaint and documents relied on in the complaint clearly show that a party's claim is subject to an enforceable arbitration clause, the Court will use a "Rule 12(b)(6) standard without discovery's delay." *Id.* at 777 (internal citation omitted). The motion to dismiss standard is inappropriate, however, where "either the motion to compel arbitration does not have as its predicate a complaint with the requisite clarity to establish on its face that the parties agreed to arbitrate or the opposing party has come forth with reliable evidence that is more than a mere naked assertion . . . that it did not intend to be bound by the arbitration agreement, even though on the face of the pleadings it appears that it did." *Id.* at 774. In such circumstances, "the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing." *Id.* at 776. After this limited discover is completed, the court

"may entertain a renewed motion to compel arbitration, this time judging the motion under a summary judgment standard." *Id.*

Under Rule 56, a court "shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L.Ed. 2d 202 (1986). Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. *Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109 (3d Cir. 1985). In the context of a motion to compel arbitration, that party must "demonstrate, by means of citations to the record, that there is a genuine dispute as to the enforceability of the arbitration clause." *Guidotti*, 716 F.3d at 776 (quotations omitted). The non-moving party cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1130-31 (3d Cir. 1995).

### III. DISCUSSION

Defendant argues that the complaint is sufficiently clear to establish that Plaintiffs agreed to the terms of the PPA and therefore a 12(b)(6) standard should govern this Court's review. Defendant emphasizes that Plaintiff Christine Droney signed the PPA, the PPA's arbitration agreement is valid, and the agreement governs Plaintiffs' claim. Meanwhile, Plaintiffs argue that the complaint does not clearly establish the existence of a valid and enforceable arbitration

agreement and advocate instead for a Rule 56 standard. Plaintiffs emphasize that Mrs. Droney submitted an affidavit that she signed a blank iPad, she did not agree to the PPA, and Defendant has not adduced evidence to the contrary. This Court first looks to the clarity of the pleadings to determine whether to use a Rule 12 or Rule 56 standard. *See Guidotti*, 716 F.3d 764 (3d Cir. 2013).

### A. Clarity of the Pleadings

The threshold issue is whether arbitrability is apparent on the face of the complaint. Contrary to Defendant's arguments, arbitrability is *not* apparent on the face of the complaint. Plaintiffs' amended complaint states that the PPA is "a document that the Droneys have never seen." Am. Compl. ¶ 72. Moreover, Christine Droney claims that she "was not shown, did not see, nor was she given opportunity to review any information on Jeremy's iPad." Am. Compl. ¶ 13. She also denies checking the two boxes indicating her understanding of the PPA and its arbitration clause. *Id.* ¶ 15. The amended complaint similarly charges that the PPA "is a fraud." *Id.* ¶ 55.

Defendant argues that Plaintiffs' claim of fraud is for the arbitrator, not this Court. Def. Mot. to Comp. at 11–12 (citing cases). This argument turns on whether the complaint alleges fraud in the inducement or fraud in the execution. Fraud in the inducement occurs when one party's fraud induces another party to enter into an agreement he or she would not otherwise have entered. Importantly, both parties recognize the existence and general nature of that agreement. The general rule is that such fraud defenses are a matter for the arbitrator, not the Court. *See Connors v. Fawn Mining Corp.*, 30 F.3d 483, 490 (3d Cir. 1994). Meanwhile, fraud in the execution occurs when one party executes an agreement with another party that is different

in nature from what the other party was led to believe it had entered. *Id.* Importantly, one party recognizes an agreement that is fundamentally dissimilar from the one it entered. The general rule here is that defenses of fraud in the execution are a matter for the Court, not an arbitrator. As one state court explained, a party cannot be required to submit a dispute to arbitration which he has not agreed to submit. *Angrisani v. Financial Technology Ventures, LP*, 952 A.2d 1140, 1148 (N.J. Super Ct. App. Div. 2008).

Here, the amended complaint alleges fraud in the execution. Mrs. Droney claims she signed a blank electronic iPad to permit Defendant's salesman to enter her home. The twenty-three page PPA, however, included a waiver of the Droney's right to a jury trial. The PPA is therefore "radically different from what [Plaintiff Christine Droney] was led to believe [she] was signing." 30 F.3d at 490; see also *Operating Engineers Pension Trust v. Gilliam*, 737 F.2d 1501, 1504–05 (9th Cir. 1984) (finding an employer "was not obligated to make such [contractual] payments as he had reasonably relied on the union's representation that he was signing a document of a wholly different nature"). This stark difference in what Mrs. Droney reasonably believed she agreed to and the PPA at issue is fraud in the execution. *See S.W. Adm'rs, Inc. v. Rozay's Transfer*, 791 F.2d 769, 774 (9th Cir. 1986).

A Rule 12 standard is inappropriate in the instant matter because the issue of arbitrability is not clear on the face of the complaint. Moreover, the Defendant mischaracterizes the fraud claim as fraudulent inducement. The Court therefore considers the Defendant's motion to compel arbitration under a Rule 56 standard.

### B. Whether A Genuine Dispute of Material Fact Exists

The court in *Guidotti* provides guidance for evaluating a motion to compel under a Rule 56 standard. There, the Third Circuit explained that "[a]n unequivocal denial that the agreement has been made, accompanied by supporting affidavits . . . should be sufficient to require a jury determination on whether there had in fact been a 'meeting of the minds." *Id.* at 778 (internal citation omitted).

Plaintiff Christine Droney presented evidence consistent with the Court's discussion in *Guidotti*. First, she unequivocally denied entering the PPA or checking any boxes on the iPad. Second, she presented the Court with a sworn affidavit attesting that no agreement existed. Christine Droney Aff. [Doc. No. 14-1] ("I never saw any contract. . . I was never told about any contract . . . The only thing I saw on the iPad was the signature box where Jeremy was pointing. . . . I did not receive or see what Vivint Solar calls a . . . 'PPA'. . ."). Her husband similarly swore that he did not sign the PPA. Timothy Droney Aff. [Doc. 14-6]. Mrs. Droney also produced her original complaint to Vivint Solar and the Better Business Bureau. Both assert that she never approved of anything other than Jeremy's entry onto her property. Pl. Opp'n Motion at 4 ("He asked for my signature permission to go on the roof . . . This was to sign and survey the roof in concert with my electric supplier . . . he acted as [if] he was [an] agent on behalf of my electric company").

Defendant's evidence does little to clear up Plaintiffs dispute as to whether an agreement existed. Defendant provides a copy of the PPA, which includes a copy of Mrs. Droney's signature. In addition, Defendant includes an affidavit from Jared C. Fields, Esq., Vivint's associate general counsel. Mr. Fields swears that Mrs. Droney "entered into the [PPA]." Dec. of Jared Fields, Esq. [Doc. No. 12-3]. He similarly swears that she "agreed that the checkbox

constituted her electronic signature and further agreed to be bound by the Arbitration Agreement." *Id.* Plaintiff correctly charges that the Court should not rely on such evidence since the affiant lacked personal knowledge to make such a statement. Pl. Opp'n Motion at 6. Plaintiffs further argue that Defendant has failed to show that the PPA on the record appeared on Jeremy's iPad.[2] Ultimately, this Court finds that Mrs. Droney's affidavit and the lack of contrary evidence from someone with personal knowledge raise a genuine issue as to whether an agreement existed.

The Court in *Guidotti* provides additional support for this Court's finding of a genuine dispute regarding the alleged agreement. In discussing an analogous case, the Third Circuit explained:

> We find further support for that conclusion in *Kirleis v. Dickie, McCamey & Chilcote, P.C.,* 560 F.3d 156 (3d Cir.2009), a case in which we examined whether a lawyer had agreed to an arbitration provision contained in her firm's bylaws. She alleged in a sworn affidavit that she 'was never provided with a copy of the By-Laws of defendant Firm,' had 'never signed any agreement or document which refers to or incorporates the arbitration provision in the By-Laws,' and had 'never agreed to arbitrate ... claims against Firm.' Although the law firm did not

---

[2] Defendant submitted another affidavit in its reply brief attesting that the signor of the PPA "would have seen and had access to the full [PPA], including the Arbitration Agreement contained therein." Dec. of Donovan Bunker [Doc. No. 17-1]. This Court declines to consider this new evidence at this juncture. The purpose of a reply brief is to "respond[ ] to the opposition brief and explain[ ] a position that the respondent has refuted." *Halprin v. Verizon Wireless Serv., LLC*, No. 07–4015, 2008 WL 961239, at * 8 (D.N.J. April 8, 2008); *see also Elizabethtown Water Co. v. Hartford Cas. Ins. Co.*, 998 F. Supp. 447, 458 (D.N.J. 1998) ("It is axiomatic that reply briefs should respond to the respondent's arguments or explain a position in the initial brief that the respondent has refuted").

'submit[ ] contradictory evidence showing that Kirleis had received the bylaws or had signed them,' we noted that, even if it had, 'the task of weighing the evidence and choosing which side to believe would have been for a jury.' 'Accordingly,' we held, 'Kirleis's allegations create a genuine issue of fact as to the existence of an agreement to arbitrate.'

716 F.3d at 779 (internal cases omitted).

Defendant's additional arguments do little to support its motion. First, Defendant asserts the general principle that the signer of an instrument is bound by its terms whether the signer read the instrument. But the issue here is not reduced simply to whether Mrs. Droney *read* the PPA. Most obviously, the complaint denies the existence of the PPA at the time of her signing and states that she signed an otherwise blank iPad.[3] Second, Defendant asserts that Plaintiffs' fraud claim should be viewed as a *general* challenge to a contract as a whole consistent with the Supreme Court's ruling in *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006). But a careful reading of that case does not support the Defendant's assertion. Crucially, the Supreme Court qualified its finding of arbitrability to a party challenging a contract's *validity*. *Id.* at fn. 1 ("The issue of the contract's validity is different from the issue whether any agreement between the alleged obligor and obligee was ever concluded. Our opinion today addresses *only* the

---

[3] This general rule that a person cannot avoid a contractual obligation by simply failing to read the contract does not apply when one party is led to believe it is signing an instrument that is completely different from the one that it actually signs. *See Gilliam,* 737 F.2d at 1504 ("We recognize that a party who signs a written agreement generally is bound by its terms, even though he neither reads it nor considers the legal consequences of signing it. This proposition, however, is qualified by the principle that he who signs a document reasonably believing it is something quite different than it is cannot be bound to the terms of the document. For example, one who signs a promissory note reasonably believing he only gave his autograph is not liable on the note." (citations omitted))

former . . .") (emphasis added). The Defendant's argument not only ignores this footnote but it overlooks this Circuit's demarcation of contracts that are asserted to be "void" or non-existent, as contended here, and those that are merely "voidable." *See Sandvik AB v. Advent Int'l Corp.*, 220 F.3d 99, 104, 107 (3d. Cir. 2000) (explaining the Court will not refer a "matter to the arbitrators without a definitive conclusion on the issue whether an agreement to arbitrate actually existed"). This distinction is one shared by other circuits and is fatal to the Defendant's position.[4]

Finally, this Court disagrees with Defendant's loose characterization of Plaintiffs' fraud claim. For example, Defendant attacks Plaintiffs' fraud in the execution claim as "having little legal or factual support" and "seek[ing] to distract the Court with exaggeratedly dramatic allegations [and] bombastic prose . . ." Def. Reply [Doc. No. 17] at 1. This argument ignores the affidavit signed by Mrs. Droney as well as numerous civilian complaints that Plaintiffs adduce that appear to show a pattern of fraudulent conduct on behalf of Defendant Vivant Solar. *See* Doc. No. 14-8. More problematically, Defendant misconstrues several cases it relies upon. In addition to the omitted footnote in *Buckeye Check Cashing* discussed above, Defendant misinterprets *Joaquin v. Directv Grp.*, No. 15-8194, 2016 WL 4547150 (D.N.J. Aug 30, 2016), which it cited for the proposition that a Plaintiff must plausibly challenge assent when challenging a motion to compel arbitration. In granting the motion to compel arbitration, the Court there noted that Plaintiff "has not produced *any* affidavits to support her claim" of no

---

[4] *See, e.g. Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F. 2d 1136, 1144 (9th Cir. 1991) (noting that "district court must first determine whether the signatory had authority to bind the other plaintiffs to the agreements containing arbitration clauses"); *Sphere Drake Ins. Ltd. V. All Am. Ins. Co.*, 256 F.3d 587, 591 (7th Cir. 2001) (distinguishing fraud in the inducement from cases where a party lacked the authority to enter an agreement so an agreement did not exist); *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 219 (5th Cir. 2003) ("We therefore conclude that where a party attacks the very existence of an agreement, as opposed to its continued validity or enforcement, the courts must first resolve that dispute.")

mutual assent. *Id.* (internal citation omitted) (emphasis added). The Plaintiffs here, however, have supplemented an unequivocal denial of assent with affidavits. This Court therefore finds a genuine issue as to whether the parties ever entered into a valid agreement and denies the Motion to Compel Arbitration.

**IV.   CONCLUSION**

For these reasons, Defendant's Motion to Compel Arbitration is DENIED.

Dated:   11/27/2018                                                          _s/ Robert B. Kugler_
                                                                                          ROBERT B. KUGLER
                                                                                          United States District Judge