IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | | |
|---|---|---|
| CHRISTINE DRONEY, *et al.*, | : : : | |
| Plaintiffs, | : : | Civil No. 18-849 (RBK/JS) |
| v. | : : : | **AMENDED OPINION**[1] |
| VIVINT SOLAR, | : : | |
| Defendant. | : : : : : : | |

**KUGLER**, United States District Judge:

This matter comes before the Court upon Defendant's Motion for Summary Judgment (Doc. 48) and Defendant's Motion to Strike (Doc. 60). For the reasons expressed herein, Defendant's Motion to Strike is GRANTED, and Defendant's Motion for Summary Judgment is DENIED.

**I.   BACKGROUND**

Plaintiffs Christine and Timothy Droney ("Plaintiffs" or "Mr. and Mrs. Droney") brought this action pursuant to the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et. seq.*, alleging that Defendant Vivint Solar ("Defendant" or "Vivint") violated the FCRA when it obtained their individual credit reports.

**A.   Factual History**

---

[1] This Amended Opinion supersedes the Court's original June 23, 2020 Opinion (Doc. 73). This Amended Opinion is the result of Defendant's Motion for Reconsideration or Clarification (Doc. 77), which the Court granted in its Opinion and Order entered today.

Plaintiffs are spouses, and live together at their home in Linwood, New Jersey. (Doc. 48-2 ("Def. SOF") ¶2.) On January 21, 2016, Mrs. Droney was at home when the doorbell rang. (Doc. 54-1 ("Pl. RSOF" ¶1.) Answering it, she met someone named Jeremy O'Dell, an employee of Defendant. (*Id*. ¶2.) Plaintiffs and Defendant paint starkly different pictures of what transpired during this interaction.

Plaintiffs claim that O'Dell informed Mrs. Droney that he was working with her electric supplier, Atlantic City Energy, to conduct a "roof survey." (Pl. RSOF. ¶¶1–2.) Mrs. Droney told O'Dell that her husband was not home, and she wanted to speak with him before any survey was conducted. O'Dell then continued the conversation, connecting with Mrs. Droney's interest in social work by mentioning that "his wife was a social worker who worked with abused kids." (*Id*. ¶¶3–4.) As the conversation ended, O'Dell asked Mrs. Droney to sign his iPad to give Atlantic City Energy permission to conduct a roof survey. (*Id*. ¶6.) Mrs. Droney, seeing only a signature box set against a blank screen on the iPad, signed with her finger, but clarified that she was not signing anything on behalf of her husband, and that she still needed to speak with him before any roof survey occurred. (*Id*. ¶¶7–9.) She states that O'Dell never mentioned that his visit was in connection with the sale of solar panels, and never informed her that she was signing anything that would result in her credit report being pulled. (*Id*. ¶¶11–15.)

Turning to Defendant's version of events, Defendant claims that O'Dell never represented to Mrs. Droney that he was affiliated with Atlantic City Energy, and that he also never represented that his wife was a social worker. (Doc. 58-2 at 1–2.) Defendant also claims that, when O'Dell presented Mrs. Droney with the iPad, the screen displayed several documents—a Prospective Consumer Consent Form ("PCCF") and Power Purchase Agreement ("PPA")—for her to review before signing, rather than simply a blank screen with a signature box, and that these forms

permitted Defendant to inquire into Mrs. Droney's credit report. (*Id*. at 3; Def. SOF ¶7.) O'Dell denies that he never mentioned to Mrs. Droney that he was selling solar panels. (*Id*. at 4.)

The day after O'Dell's visit, Mrs. Droney received an alert that Defendant had pulled her consumer credit report. (Pl. RSOF ¶23.) She similarly learned that Defendant inquired into her husband's consumer credit report. (*Id.*). Upon this information, Mrs. Droney filed a report with the police, and filed related complaints with the Better Business Bureau, the Federal Trade Commission, and Defendant itself. (*Id.* ¶¶26–27). She also called Atlantic City Electric, a representative for which confirmed that O'Dell was not its employee. (*Id*. ¶28.) Some time after receiving Plaintiffs' complaint that their credit had been pulled without authorization, Defendant's representative sent letters to the relevant credit bureaus which asked them to remove any inquiry into the Droneys' credit reports. (*Id.* ¶¶31–33.)

Defendant claims that it pulled Plaintiffs' credit reports because the forms that were uploaded by O'Dell contained the electronic signatures of both Mr. and Mrs. Droney. (Def. SOF ¶¶2, 10–11.) Plaintiffs contend that Mr. Droney never provided his signature on any document, as he was not home when O'Dell visited. Although the inquiries were ultimately removed from Plaintiffs' credit reports, Plaintiffs allege that the unauthorized inquiry into their credit caused a great deal of stress and emotional difficulty. (Def. SOF ¶19; Pl. SOF ¶¶24–25.)

### B. Procedural History

Plaintiffs filed their Complaint (Doc. 1) in this matter on January 20, 2018 and filed an Amended Complaint (Doc. 11) on March 23, 2018. In the Amended Complaint, Plaintiffs each allege a single count for violation of the Fair Credit Reporting Act. This count alleges that Defendant violated the FCRA by willfully and/or negligently obtaining the Plaintiffs' consumer credit reports without a statutorily permissible purpose. (Doc. 11.) Plaintiffs allege that Defendant

3

"surreptitiously enrolled them into a bogus finance contract for solar services they never wanted," and that in doing so, Defendant accessed their consumer credit reports unlawfully and under false pretenses. (Doc. 11 ¶¶2, 20, 70) The Droneys further allege that Defendant routinely engaged in such unlawful business practices in order to obtain consumer reports. (*Id*. ¶38.)

Defendant moved to compel arbitration of Plaintiffs' claims, which this Court denied on November 28, 2018. (Doc. 22.) After a period of discovery, on October 15, 2019, Defendant filed its Motion for Summary Judgment. (Doc. 48.) Along with that motion, Defendant also filed a motion to preclude the testimony of Plaintiffs' expert, Evan Hendricks. (Doc. 49.)

On June 12, 2020, Judge Schneider denied in part and granted in part Defendant's motion to preclude expert testimony. (Doc. 72.) Judge Schneider determined that "Hendricks is qualified to testify about the general areas of credit reporting and credit data privacy. However, Hendricks is not qualified to testify about plaintiffs' damages, emotional or physical, or damages expected to flow from FCRA violations. The Court further finds Hendricks' may testify about general privacy issues." (Doc. 72 at 24.)

On February 18, 2020, Plaintiffs filed a "Notice of Additional Disputed Material Facts in Opposition to Defendant's Motion for Summary Judgment." (Doc. 59.) On March 3, 2020, Defendant filed a Motion to Strike these additional facts. (Doc. 60.) As this motion necessarily affects the Court's analysis of Defendant's motion for summary judgment, the Court addresses it below as well.

## II.   LEGAL STANDARD

### A.  Motion for Summary Judgment

The court should grant a motion for summary judgment when the moving party "shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment

as a matter of law." Fed. R. Civ. P. 56(a). An issue is "material" to the dispute if it could alter the outcome, and a dispute of a material fact is "genuine" if "a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Matsushida Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'") (quoting *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 289 (1968)). In deciding whether there is any genuine issue for trial, the court is not to weigh evidence or decide issues of fact. *Anderson*, 477 U.S. at 248. Because fact and credibility determinations are for the jury, the non-moving party's evidence is to be believed and ambiguities construed in his favor. *Id*. at 255; *Matsushida*, 475 U.S. at 587.

Although the movant bears the burden of demonstrating that there is no genuine issue of material fact, the non-movant likewise must present more than mere allegations or denials to successfully oppose summary judgment. *Anderson*, 477 U.S. at 256. The nonmoving party must at least present probative evidence from which a jury might return a verdict in his favor. *Id.* at 257. The movant is entitled to summary judgment where the non-moving party fails to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

### B. Motion to Strike

Under Federal Rule of Civil Procedure 12(f), a party may move to strike from a pleading "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." A court has "considerable discretion" in deciding a Rule 12(f) motion. *Tonka Corp. v. Rose Art Indus., Inc.*, 836 F. Supp. 200, 217 (D.N.J. 1993). Motions to strike usually will be denied "unless the allegations have no possible relation to the controversy and may cause prejudice to one of the

parties, or if the allegations confuse the issues in the case." *River Road Dev. Corp. v. Carlson Corp. Ne.*, No. 89–7037, 1990 WL 69085, at *3 (E.D. Pa. May 23, 1990).

## III.   DISCUSSION

### A.  Motion to Strike

The supplemental statement of disputed material fact that Plaintiffs filed in February 2018 seeks to add the following statements to the record:

> 108. At the time Vivint Solar was receiving consumer complaints of fraud, forgery and impermissible credit pulls by Chamberlain in 2016 - 2017, the company was aware that impermissible credit pulls and bogus emails were a "big" problem and a "systemic issue."
>
> 109. Vivint was alerted to the "big" and "systemic" problem of impermissible credit pulls and the use of bogus email addresses in January 2017, at the latest, by a financing partner named Solar Mosaic, Inc. Solar Mosaic is Vivint's co-defendant in a matter in a matter styled *Cardona and Brown v. Vivint Solar*, U.S.D.C. M. D. Fla. No. 8:18-cv-02838-SCB-JSS, and turned over scores of email communications with Vivint as ordered by the Middle District of Florida.
>
> 110. The consumer Plaintiffs in *Cardona* allege their signatures were forged by Vivint salesmen and their credit was pulled without their consent in January 2017 and September 2017, respectively.
>
> 111. As of January 2017, Vivint was aware of between 87 and 152 such "incidents" with Mosaic accounts in Florida alone.

(Doc. 59 at 1–2.) The exhibits that Plaintiffs attach in support of these statements consist of material from another case, *Brown v. Vivint Solar*, No. 8:18-02838 (M.D. Fla.), in which Defendant Vivint Solar and Plaintiffs' counsel are involved. These exhibits purport to show that one of Vivint's employees—Phillip Chamberlain—had pulled the credit reports of numerous consumers without their authorization, and that Vivint was or should have been aware of this issue since as early as 2017. Plaintiffs argue that this material should be considered part of the record, as it evinces a pattern of Defendant's unauthorized credit screening. (Doc. 63 at 2.)

6

In moving to strike, Defendant argues that Plaintiffs' supplemental notice violates Federal Rule of Civil Procedure 56(c)(1)(A), as the exhibits Plaintiffs introduce in their notice are not part of the record—in fact, they are part of the record of the *Brown* case in Florida—and thus cannot be considered on a motion for summary judgment in this separate case. (Doc. 60-2 at 56.) Defendant also argues that Plaintiffs' notice violates the scope of permissible discovery, and violates a confidentiality order entered by the court in *Brown*. (*Id.* at 7–12.)

A nearly identical issue was recently decided by Judge Hillman in a similar case before this Court, *Reilly v. Vivint Solar,* 18-12356, 2020 WL 3046316 (D.N.J. June 8, 2020). In *Reilly*, a plaintiff (represented by the Plaintiffs' counsel in this case) sued Vivint Solar for violating the FCRA, alleging that Vivint unlawfully accessed his credit report by using a PCCF with a fraudulently obtained signature. *Id*. at *1. Vivint filed for summary judgment against the *Reilly* plaintiff; opposing Vivint's motion, the plaintiff filed a notice of supplemental facts that contained four paragraphs identical to the Droneys' supplemental fact statements here, which were also supported by exhibits from the *Brown* case. *Id*. at *2–3. Vivint filed a motion to strike the supplemental facts in *Reilly*, arguing the same points as it does in this case; further, the *Reilly* plaintiff defended the supplemental facts in the same way as the Droneys do here, claiming that the supplemental facts relate to Vivint's knowledge of fraudulent practices. *Id*.

Judge Hillman granted Vivint's motion to strike the supplemental facts in *Reilly*, finding that "most of [the plaintiff's] proffered factual statements refer to information first known to [Vivint] in 2017, after Plaintiff filed this action and after the incident with Plaintiff occurred," and "[t]herefore, the document relied upon by Plaintiff does not support Plaintiff's proposition that Defendant knew of Chamberlain's actions before the incident with Plaintiff occurred." *Reilly*, 2020 WL 3046316 at *3. Thus, as "these supplemental facts and the material Plaintiff relies upon to

support them are not temporally relevant to Defendant's motion for summary judgment – or in other words, they do not tend to prove Defendant had knowledge of Chamberlain's actions before the incident involving Plaintiff occurred," Judge Hillman held that the supplement facts would "not be considered by the Court in deciding Defendant's motion for summary judgment and will be stricken from the record." *Id*.

Judge Hillman's analysis in *Reilly* is equally applicable here. The incident underlying this case—O'Dell's visit and the subsequent credit pull—occurred in January 2016. Yet, in attempting to show that Defendant knew of its employees' fraudulent credit pulls at the time of the January 2016 incident, Plaintiffs seek to offer supplemental facts alleging that Defendant had such information beginning in 2017. Therefore, as in *Reilly*, these supplemental materials "do not tend to prove Defendant had knowledge of Chamberlain's actions before the incident involving Plaintiff occurred." *Reilly,* 2020 WL 3046316 at *3. Accordingly, Defendant's motion to strike will be granted, and Plaintiff's supplemental notice will not be considered when addressing Defendant's summary judgment motion below.[2]

### B. Motion for Summary Judgment

Defendant argues that summary judgment should be granted on Plaintiffs' FCRA claim because: it had a reasonable belief that a permissible purpose existed to obtain Plaintiffs' credit reports; Plaintiffs cannot establish damages from the credit pulls; and, due to Defendant's reasonable belief, Plaintiffs cannot establish a willful violation of the FCRA. (Doc. 48-4.) In response, Plaintiffs argue that: Defendant did not have a permissible purpose because "reasonable belief" is not the correct standard to apply; they are entitled to damages for emotional distress; and

---

[2] Because the motion to strike is granted on this basis, the Court declines to consider the parties' arguments regarding confidentiality.

Defendant willfully violated the FCRA because it purposefully ignored its salesperson's fraudulent tactics. (Doc. 54.)

All of the parties' arguments in this case were also made in *Reilly*, in which Judge Hillman analyzed the legal sufficiency—or lack thereof—of each. As such, the reasoning in *Reilly* will be considered when analyzing each of the parties' respective arguments.

### i. Applicable Standard for FCRA Violations

"Congress enacted [the] FCRA in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of America v. Burr*, 511 U.S. 47, 53 (2007) (citing 15 U.S.C. § 1681). In furtherance of those aims, the FCRA provides that consumer credit reports may only be obtained for a permissible purpose. It sets out a limited number of circumstances constituting a permissible purpose, two of which are relevant to this action: first, a consumer credit report may be obtained "in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to . . . the consumer." 15 U.S.C. § 1681b(a)(3)(A). "Second, a consumer report may be obtained if the user 'otherwise has a legitimate business need for the information' in connection with a business transaction that is 'initiated by the consumer.'" *Reilly,* 2020 WL 3046316 at *5 (citing 15 U.S.C. § 1681b(a)(3)(F)).

A plaintiff may bring an action against "'[a]ny person who willfully fails to comply' or who 'is negligent in failing to comply' with the FCRA's permissible-use requirements." *Reilly*, 2020 WL 3046316 at *5 (citing 15 U.S.C. §§ 1681n(a), 1681o(a)). In order "to prevail on a claim under the FCRA, a plaintiff must prove both that the defendant used or obtained the plaintiff's credit report for an impermissible purpose, and that the violation was either willful or negligent." *Id*. (citing 15 U.S.C. §§ 1681b(f), 1681n, 1681o).

Here, Defendant argues that it pulled the Droneys' credit reports in connection with the two aforementioned permissible purposes. (Doc. 48-4 at 13.) It argues that, because O'Dell had uploaded PCCF documents that appeared to be signed by Mr. and Mrs. Droney, it had a "reason to believe" that it had Plaintiffs' permission to pull credit for those two uses. (*Id*. at 16.) In opposition, Plaintiffs argue that "reasonable belief" is an incorrect standard to apply in this context. (Doc. 54 at 18.)

In *Reilly,* Vivint proffered this same "reasonable belief" standard for credit pulls in connection with 15 U.S.C. §§ 1681b(a)(3)(A) and (F); as here, it argued that it reasonably believed that the signed forms uploaded by its employee were obtained legitimately. There, Judge Hillman disagreed with Vivint's proposed definition of "reasonable belief," and instead found that the question of whether a user had a "reasonable belief" that it had a permissible purpose to obtain a credit report was simply "an alternative way of describing the intent requirement inherent in the FCRA." *Reilly*, 2020 WL 3046316 at *6. "In other words, if a defendant establishes that it acted reasonably to inquire into a plaintiff's credit worthiness, it would appear to follow that the defendant did not act negligently or willfully to violate the statute." *Id*. Thus, Judge Hillman found that the applicable standard for FCRA claims in this context is whether "Defendant (1) accessed Plaintiff's consumer credit report without a permissible purpose and (2) whether a jury could determine that Defendant did so negligently or willfully." *Id*. The Court agrees with this interpretation, and applies it in conducting the below analysis.

Defendant claims that it "had a reasonable basis to believe that it had Plaintiffs' permission to pull credit for (1) a possible extension of credit, and/or (2) a business transaction in which it had a legitimate business need for the information." (Doc. 48-4 at 15.) Defendant thus argues that a 'permissible purpose' existed for its request under § 1681b(a)(3)(A), because it believed that the

10

signed forms uploaded by O'Dell indicated that Plaintiffs wished to apply for credit, and that a permissible purpose existed under § 1681b(a)(3)(F), because it believed that Plaintiffs were initiating a business transaction for the purchase of solar panels. (*Id*.)

Noting Ms. Droney's inference that O'Dell admitted to wrongfully obtaining and submitting the PCCF, Plaintiffs argue that Defendant "knew there was no consent [for the credit pull] because O'Dell knew there was no consent." (Doc. 54 at 23.) Plaintiffs argue that, because "O'Dell was Vivint's agent acting in the course of his agency," and knew there was no permissible purpose, Defendant was therefore acting negligently or willfully when it pulled their credit reports without a permissible purpose. (Doc. 54 at 23.) Defendant argues in response that it is not vicariously liable for any wrongful acts committed by O'Dell. (Doc. 58 at 7.) It contends that any forgery or misconduct by O'Dell occurred outside the scope of his employment, and thus his wrongdoing cannot be imputed to Defendant. (Doc. 58 at 7–8.)

The parties' arguments on this point are closely related, but nonetheless separate: Plaintiffs are arguing the concept of imputed knowledge, while Defendant focuses on vicarious liability. "While both concepts are related agency principles, they are nonetheless distinct. Certainly, knowledge may be imputed from an agent to a master without necessarily creating vicarious liability." *Reilly*, 2020 WL 3046316, at *7.

As of now, the Third Circuit has not "yet opined on whether an employer can be held vicariously liable for actions of an employee or agent under the FCRA." *Reilly*, 2020 WL 3046316, at *7. However, "a growing number of courts agree that traditional agency principles apply in the FCRA context, which may result in the creation of vicarious liability." *Id*. Applying agency principles in this context is logical and perhaps necessary: "[b]ecause a company . . . can act only through its agents, it is difficult to imagine a situation in which a company would ever be found to

have willfully violated the statute directly by obtaining a credit report for an impermissible purpose." *Jones v. Federated Financial Reserve Corp.*, 144 F.3d 961, 966 (6th Cir. 1998).

"Under traditional agency law principles, an agent has a duty to disclose material information to the principal, and the principal is 'deemed to have knowledge' of those material facts." *Reilly,* 2020 WL 3046316, at *7 (quoting *In re WL Homes, LLC*, 534 F. App'x. 165, 169 (3d Cir. 2013)). In this context, when O'Dell visited the Droneys' home on behalf of Defendant, there can be no dispute—and Defendant does not seem to contest—that O'Dell was acting as Defendant's agent.

"For purposes of determining a principal's legal relations with a third party, notice of a fact that an agent knows or has reason to know is imputed to the principal if knowledge of the fact is material to the agent's duties to the principal." *Huston v. Procter & Gamble Paper Prod. Corp.*, 568 F.3d 100, 106 (3d Cir. 2009); *see also Reilly,* 2020 WL 3046316 at *7 ("To justify imputing an agent's knowledge of facts to a master, the facts must be important or significant to the agent's duties to the master.") Information is "material" for agency purposes when an "employee uses that knowledge in the performance of the employee's duties to the employer." *Huston*, 568 F.3d at 106-07.

If the jury determines that O'Dell forged the documents, the question thus becomes whether O'Dell's knowledge that the signed forms were procured fraudulently —and that no permission in fact existed—can be imputed to the principal, Defendant. O'Dell's actions in this case, which included approaching potential customers to complete these forms in connection with the sale of Defendant's solar panels, were certainly material to his job duties. If the jury determines that O'Dell used trickery to perform his mandated job duties, this would not sever the agency relationship: while O'Dell's specific methods used in uploading the forms "may not have been

approved by Defendant, it is beyond dispute that completion of the forms were squarely within Defendant's expectations of its salespeople." *Reilly*, 2020 WL 3046316 at *7.

Applying a standard created by the First Circuit, the court in *Reilly* asked whether the worker who procured fraudulent forms for Vivint "was (1) the defendant's agent, (2) was armed with information only available through his employment role, (3) had access to the [place] where the intentional tort occurred through his employment role, and (4) used that access to commit the act." 2020 WL 3046316 at *7 (citing *Costos v. Coconut Island Corp.*, 137 F.3d 46, 50 (1st Cir. 1998)). Applying this standard here, a jury could find that (1) O'Dell was Vivint's agent; (2) O'Dell received information about and from the Droneys that he used to complete the PCCF forms only because of his role as Vivint's agent; (3) O'Dell had access to the Droneys' house in his role as Vivint's agent; and (4) O'Dell used that access to commit the wrongful act of fraudulently procuring and completing the signed forms. Thus, just as the *Reilly* court found, "an intentionally harmful act by [O'Dell] does not necessarily immunize Defendant from vicarious liability or imputation of [O'Dell's] knowledge," as leaving "victims of an agent's actions without recourse for intentional acts committed while under the employ of a master" would be "inconsistent with Congressional intent in enacting the FCRA, namely, to protect consumers from unauthorized access to consumer reports."[3] *Id*. (citing *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007)).

---

[3] Defendant's heavy reliance on *Kennedy v. Victoria's Secret Stores, Inc.,* Civ. No. 03-2691, 2004 WL 2186613 (E.D. La. Sept. 29, 2004) is inappropriate here for the same reasons articulated in *Reilly*. There, Judge Hillman found that "the *Kennedy* court does not appear to have thoroughly applied or analyzed the issue of vicarious liability or imputed knowledge," and noted that, if *Kennedy* stood for Defendant's proposition that an agent's act cannot be imputed to a principal under the FCRA, then "corporate entities could essentially escape FCRA liability by hiding behind an agent's or employee's inappropriate actions." *Reilly,* 2020 WL 3046316 at *8. Judge Hillman further found that applying *Kennedy* in Defendant's proposed manner would contradict the decision in *Jones*: "such an outcome would, as the *Jones* court recognized, essentially immunize employers from liability for their employees' improper actions and would significantly frustrate a victim's ability to enforce their rights under the FCRA. In balancing *Jones* and *Kennedy*, the Court finds that the holding in *Jones* teaches the proper result." *Id*.

13

Because it would not be inappropriate to impute O'Dell's knowledge to Defendant, and because questions of fact remain—namely, whether Mr. Droney's signature was actually forged, since he was purportedly not home at the time of O'Dell's visit, and whether Mrs. Droney or O'Dell provided the correct version of events as to what exactly transpired at the Droneys' house—summary judgment is inappropriate here. It is properly the role of a jury to determine whether Defendant knew that Plaintiffs did not authorize it to pull their credit or whether Plaintiffs indicated to O'Dell any desire to purchase solar panels. *Anderson*, 477 U.S. at 248. Accordingly, because Plaintiffs have "identified facts from which a jury could find that Defendant did not have a permissible purpose for obtaining Plaintiffs' credit report, and because Plaintiff[s] ha[ve] also identified facts from which a jury could determine Defendant acted negligently or willfully, summary judgment must be denied."[4] *Reilly*, 2020 WL 3046316, at *6.

### ii. Damages

Defendant also argues that, even if it could be found to have violated the FCRA, summary judgment is nonetheless warranted because Plaintiffs cannot establish any damages for the violation. (Doc. 48-4 at 17–23.) Plaintiffs argue that they are entitled to actual damages for emotional distress, and that their testimony as to the extent of their emotional distress constitutes evidence even without corroborative medical evidence. (Doc. 54 at 24–25.)

The Third Circuit addressed the matter of emotional distress damages for violations of the FCRA in *Cortez v. Trans Union, LLC*, 617 F.3d 688 (3d Cir. 2010). It stated that "psychological and stress-related suffering . . . is the very kind of injury that would be expected to result" from a violation of the FCRA, and that, "[i]n allowing suits for damages, Congress certainly intended to

---

[4] The Court does not separately analyze Defendant's argument that Plaintiffs cannot establish that it acted willfully. (Doc. 48-4 at 23–25.) As explained above, Plaintiffs have introduced evidence that would allow a jury to find that Defendant acted negligently or willfully in overlooking O'Dell's misconduct; accordingly, a separate discussion as to willfulness is unnecessary here.

14

allow compensation for the very kind of harm that the FCRA was intended to prevent." *Id*. at 719. It held in no uncertain terms that "damages for violations of the FCRA allow recovery for humiliation and embarrassment or mental distress even if the plaintiff has suffered no out-of-pocket losses." *Id*. The Third Circuit also squarely rejected the idea that there must be "corroborating testimony or medical or psychological evidence in support of the damage award," holding that "[s]uch corroboration goes only to the weight of evidence of injury, not the existence of it." *Id.* at 720. It stated that, "[i]f a jury accepts testimony of a plaintiff that establishes an injury without corroboration, the plaintiff should be allowed to recover under the FCRA. The fact that the plaintiff's injuries relate to the stress and anxiety caused by the defendant's conduct does not change that." *Id*.

Thus, under the clear rule set out by the Third Circuit, Defendant's argument that Plaintiffs' emotional distress is insufficient to show damages resulting from a violation of the FCRA is unavailing.[5] Summary judgment is not warranted on this basis.

IV. **CONCLUSION**

For the reasons expressed above, Defendant's Motion to Strike (Doc. 60) is GRANTED, and Defendant's Motion for Summary Judgment (Doc. 48) is DENIED. An accompanying Order shall issue.

Dated:  3/19/2021   /s Robert B. Kugler
ROBERT B. KUGLER
United States District Judge

---

[5] Because the Third Circuit does not require corroborating evidence as to emotional distress claims, Defendant's arguments are also unsuccessful to the extent that they are based on the exclusion of the damages testimony of Plaintiffs' expert, Evan Hendricks. (Doc. 48-4 at 12–13.)